## CASE NO. 25-60496
## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

Jackson Federation of Teachers; Barbara Phillips, Individually and on behalf of a class of all others similarly situated; James Thomas, Individually and as next friend to minor children, and on behalf of a class of all others similarly situated; Dawn Zimmerer, Individually and on behalf of a class of all others similarly situated; L. E. Jibol, Individually and as next friend to minor children, and on behalf of a class of all others similarly situated; United Campus Workers Southeast Local 3821; Madisyn Donley, Individually and on behalf of a class of all others similarly situated; Alexis Cobbs, Individually and on behalf of a class of all others similarly situated; Karen Aderer, Individually and on behalf of a class of all others similarly situated; Fostering LGBTQ+ Advocacy, Resources, and Environments; Women in Science and Engineering; Joy Parikha, Individually and as next friend to minor children, and on behalf of a class of all others similarly situated; Greg Powell, Individually and as next friend to minor children, and on behalf of a class of all others similarly situated; Jakob Clark, Individually and as next friend to minor children, and on behalf of a class of all others similarly situated; Ashley Rogers, Individually and as next friend to minor children, and on behalf of a class of all others similarly situated,

*Plaintiffs - Appellees*

v.

Lynn Fitch, in her official capacity as Attorney General of Mississippi; Gee Ogletree, in their official capacity as President of the Board of Trustees of State Institutions of Higher Learning; Steven Cunningham, in their official capacities as Members of the Board of Trustees of State Institutions of Higher Learning; Amy Arrington, in their official capacities as Members of the Board of Trustees of State Institutions of Higher Learning; Donald Clark, Jr., in their official capacities as Members of the Board of Trustees of State Institutions of Higher Learning; Et al.,

*Defendants – Appellants*

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:25-CV-417

**AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFFS-APPELLEES**

David L. Calder, Miss. Bar No. 7686
Law Office of David L. Calder
3330 Whippoorwill Lane
Oxford, MS 38655
Phone: (662) 832-1354
Fax: (866) 474-0923
E-mail : davidcalder23@gmail.com
*Counsel for Dr. Daniel W. Jones, Amicus Curiae in Support of Plaintiffs-Appellees*

## Certificate of Interested Persons

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Fifth Circuit Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal:

1. Dr. Daniel W. Jones is former Chancellor of the University of Mississippi, former vice-chancellor for Health Affairs, Professor, and Dean of the University of Mississippi School of Medicine, and he is currently president of the School Board for the Hazelhurst City School District.

2. David L. Calder is counsel for Dr. Daniel W. Jones.

i

## TABLE OF CONTENTS

Certificate of Interested Parties …………………………………………….. i

Table of Authorities ………………………………………………………… ii

Statement of Identity, Interest, and Authority to File …………………………. 1

Argument ……………………………………………………………………. 2

Conclusion ……………………………………………………….…… 6

Certificate of Service ……………………………………………………….. 7

Certificate of Compliance …………………………………………………….. 8

## TABLE OF AUTHORITIES

CASES:

*Epperson v. Arkansas,* 393 U.S. 97 (1968) …………………………………… 6

*Tinker v. Des Moines Indep. Cmty. Sch. Dist.,* 393 U.S. 503 (1969) ……………. 6

LEGISLATION*:*

*House Bill 1193 (2025 Miss. Session  Laws Chapter 491)* …………………. 1,2, 6

**Statement of Identity, Interest, and Authority to File**

*Amicus Curiae,* Daniel W. Jones, respectfully urges this Court to affirm the decision of the district court granting the plantiffs' request to enjoin enforcement of certain provisions of HB 1193 (*2025 Miss. Session Laws Chapter 491*). Dr. Dan Jones has a long career in education – as a professor, administrator, dean, chancellor, and school board member. He was the Chancellor of The University of Mississippi from 2009 until 2015.  He also served as Vice Chancellor for Health Affairs, Dean of the School of Medicine, and Professor of Medicine from 2003-2009.  A native Mississippian, he graduated from Mississippi College and earned his MD and completed his residency at the University of Mississippi Medical Center. In addition to practicing medicine and teaching, he has served as a medical education consultant to medical schools in North Korea and was engaged in health-related humanitarian activities in Iran, China, and Russia. In his community of Hazlehurst, Mississippi, Jones serves on the local hospital board and he is president of the Board of Education of the Hazelhurst City School District.

No party or party's counsel authored this brief in any respect, other than Amicus Curiae or his counsel, or made a monetary contribution to the preparation or submission of this brief. Fed. R. App. P. 29(c)(5).

The undersigned has conferred with counsel for all parties who have  indicated that there is no opposition to the filing of this Amicus Curiae Brief.

**ARGUMENT**

The plaintiffs' brief thoroughly addresses the multiple problems with the challenged portions of HB 1193. This brief focuses more narrowly on sweeping language that would prevent discussion of critical social issues in public schools, colleges, and universities [schools]. The challenged provisions prohibit schools from "engaging in" classes or events that focus on "increasing awareness or understanding of issues related to race, sex, color, gender identity, sexual orientation or national origin." See Section 3(b) (incorporating section 2(d)).

On its face, the provisions flatly ban discussion of these topics in the classroom and in informal, non-classroom discussions between students and teachers. The potential penalty is draconian: Among other things, if a school violates the act twice and fails to "cure" the violations, it stands to lose its entire state funding.

Attempts to stifle and dictate discussion go against the core mission of education at any level. Restricting speech does not eliminate issues – it limits our ability to address and resolve them. These content and viewpoint-based restrictions on speech are not justified by any compelling state interest. In fact, the state's interest in education should compel discussion of these issues.

Enforcement of the challenged portions of the bill as written would remove large portions of American and Mississippi history from our courses, bar discussion of some of the most urgent issues facing our country, and eliminate our most famous

Mississippi writers from the curriculum. The examples below are just a few of the ways in which education would be affected.

Courses in American History – and certainly Mississippi History – could not be adequately taught without a discussion of slavery, the Civil War, Reconstruction, the Civil Rights Movement, the disenfranchisement of women, the suffragette's movement, and the women's rights movement.  These courses require "engagement with" discussions of race and gender. Enforcement of the provisions would drastically alter the teaching of history from elementary school through professional schools.

Professional schools would be unable to adequately train their students for practice. For example, family law – an area included in most general law practices – is rooted in gender roles. The history of marriage requires "awareness and understanding" of gender, race, national origin, and sexual orientation. Regulation of divorce, custody, and alimony cannot be understood without the historical gender basis for its rules. It would be impossible to adequately teach family law without a discussion of same-sex relationships and the fight for marriage equality. Constitutional law courses (which are required) would have to omit large sections of the course and exclude discussion of some of the most significant Supreme Court decisions of the last 100 years, including *Brown v. Board of Education.* Basic courses in real estate would have to omit important information about discriminatory

practices in real estate sales and mortgage lending. Entire courses in employment discrimination, housing, and civil rights, would be banned. Courses in medicine would be affected. Race-based healthcare disparities are an important issue in teaching in American medical schools. Avoiding discussion of race and racism as defining risks for health would leave physicians unprepared for practicing medicine in Mississippi. Courses in journalism, psychology, education, and sociology would be affected as well.

At the college level, courses in literature would be unrecognizable, as can be illustrated just by focusing on Mississippi writers. One of Mississippi's strengths is its writers – we take pride in our literary past and present. If they stand, the challenged provisions could lead to removal of some of the most iconic literature from Mississippi classrooms, including: William Faulkner, *Intruder in the Dust*; Richard Wright, *Black Boy*; Jesmyn Ward, *Salvage the Bones*; Alice Walker, *The Color Purple*; Willie Morris, *North Toward Home*; Will Campbell, *Brother to a Dragonfly*; Ellen Douglas, *Black Cloud, White Cloud*; William Alexander Percy, *Lanterns on the Levee*; Tom Franklin, *Crooked Letter, Crooked Letter*; David Sansing, *The Other Mississippi*; Curtis Wilkie, *Dixie*; Ralph Eubanks, *A Place Like Mississippi*; William Winter, *The Measure of Our Days*; John Grisham, *A Time to Kill*; Eudora Welty, *Where Is the Voice Coming From?*

Former University of Mississippi Chancellor Robert Khayat's book, *The Education of a Lifetime*, the 2014 choice for the UM Common Reading Experience (the single book assigned to all freshmen for small-group discussion) extensively discusses racial strife at the University of Mississippi involving use of the confederate flag. Under the challenged provisions, it could not be chosen as the required text or assigned in individual classes.  His more recent book, *60*, is largely about race – an examination of the political events of 1960 and their intersection with his life. The Amicus Curiae's own memoir would fare similarly. Chancellor Jones' memoir, *Medical Missionary: My Journey Through Global Health and Higher Education*, scheduled to be released in May, describes multiple instances of race-based discrimination and threats to Black students on the campus of the University of Mississippi. In his opinion, many first-year students arrive academically prepared but socially unprepared for living in a multi-ethnic community. Speaking about race is essential for preparation of students to live in our diverse society upon graduation.

The challenged provisions would affect school boards and administrators. School boards are required to develop procedures for taking complaints and to investigate all complaints. Section 7 provides that school boards, including boards for K-12 schools, must investigate any reported violation of the act. Under Section 7(6) the school must "cure all actions relating to [any] violation" found by the

board. "Cure" is not defined in the statute. Complaints can be made by any employee, faculty, staff or contractor, student, or parent, guardian, or next friend of a student under 18. Sections 7(3), (4). Many of the challenged provisions are so confusing that those who are school board members like Dr. Jones will struggle to determine what is prohibited and what is not. It will be difficult to eliminate subjects that have been a regular part of the curriculum and discussion for many years and are now suddenly banned. Given the breadth of language and vagueness of terms, school board members may spend inordinate time – without real guidance – addressing complaints. Community members may be deterred from serving as board members in the face of these requirements. And the penalty for noncompliance is dire – loss of all state funding.

## CONCLUSION

The challenged portions of HB 1193 create a minefield for school boards, administrators, and teachers. Schools should be a place where freedom of expression is celebrated, not repressed. The Supreme Court has stated clearly that the First Amendment applies to speech in education. *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969) (students and teachers are protected by the First Amendment); *Epperson v. Arkansas,* 393 U.S. 97, 104 (1968) (federal courts have a duty to apply the First Amendment to protect speech in education). We have been teaching these subjects in the public schools of Mississippi for years because they

are important to a complete, well-rounded education. The challenged provisions of HB 1193 not only violate the Constitution – they are blatantly anti-education.

For the foregoing reasons, this Court should affirm the district court's order enjoining the enforcement of Sections 3(b), 3(f), 3(g), and 3(i) of H.B. 1193.

Respectfully submitted, this the 20th day of March, 2026.

> DANIEL W. JONES, Amicus Curiae in support of Plaintiffs- Appellees
>
> BY:  /s/ David L. Calder
> David L. Calder, Miss. Bar No. 7686
> Law Office of David L. Calder
> 3330 Whippoorwill Lane
> Oxford, MS 38655
> Phone: (662) 832-1354
> Fax: (866) 474-0923
> E-mail: davidcalder23@gmail.com
> Counsel for Dr. Daniel W. Jones

## CERTIFICATE OF SERVICE

I, David L. Calder, hereby certify that this brief has been filed with the Clerk of Court using the Court's electronic case filing system, which sent notification of such filing to all counsel of record.

Dated: March 20, 2026

> /s/ David L. Calder
> David L. Calder, Miss. Bar No. 7686
> Counsel for Daniel W. Jones

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f) and Fifth Circuit Rule 32.2, this document contains 2,244 words and 269 lines.

2. This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font. This document's footnotes are in 12-point Times New Roman font, per Fifth Circuit Rule 32.1.

Dated: March 20, 2026.

/s/ David L. Calder
David L. Calder, Miss. Bar No. 7686
Counsel for Dr. Daniel W. Jones